**Ronald D. RUSSO, Plaintiff,**

v.

**BAXTER HEALTHCARE CORP. and Baxter International, Inc., Defendants.**

**Civil A. No. 94–0555–P.**

United States District Court, D. Rhode Island.

Jan. 9, 1996.

Steven Snow, Partridge, Snow & Hahn, Providence, RI, for plaintiff.

Edward L. Gnys, Jr., Donald L. Migliri, Gunning, LaFazia & Gnys, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiff, Ronald D. Russo ("Russo"), has sued Baxter Healthcare Corp. and Baxter International, Inc. ("Baxter") for misappropriation of trade secrets, intentional interference with contractual relations, and negligence. Russo alleges that Baxter wrongly disclosed to the public Russo's design for a medical device, thereby preventing Russo from acquiring foreign patents for the design. Russo had previously sued Baxter and another party in state court regarding ownership of the design of the same device. The previous suit was settled, and Russo signed a general release. Baxter has now filed a Motion for Summary Judgment, arguing that the prior state suit and the release signed by Russo bar the current suit. Magistrate Judge Boudewyns has recommended that Baxter's motion be granted, but Russo has made a timely objection to this recommendation. For the reasons described below, Baxter's Motion for Summary Judgment is denied.

### FACTUAL HISTORY

From 1983 to 1990, Russo worked part-time for Superior Healthcare Corporation and Superior Biosystems Inc. ("Superior") developing new medical devices in exchange for salary and royalty payments. Russo's supervisor was David Brodsky, the president and majority shareholder of Superior. In early 1990, Russo designed a new closed tracheal suction device. The design of the device was allegedly disclosed to Superior under conditions of secrecy. Subsequently, Superior entered into an agreement with Baxter, in which Superior granted Baxter the exclusive right to buy and market the device, as well as an option to acquire the right to manufacture the device. A dispute arose between Superior and Russo relating to the patent for the device and to allegedly unpaid royalties on other products which Russo had designed. Russo filed suit in Rhode Island Superior Court in June 1990. Russo sued Superior and its majority shareholders, David and Carolyn Brodsky, for breach of contract, rescission, unjust enrichment, fraudulent conveyance, interference with contractual relationships, and a preliminary injunction on production of these devices. Baxter was sued as a defendant, but the Complaint mentioned Baxter only in Count V, which sought a preliminary injunction on execution of the option contract between Baxter and Superior. Superior filed a counter-claim against Russo.

Russo filed a patent application for his device, and in November 1991, Russo notified Baxter that the patent would be issued in January 1992. On December 9, 1991, Baxter allegedly disclosed the design of the device to the public at a convention of the American Association of Respiratory Care in Atlanta, Georgia. Russo claims that this disclosure rendered the device unpatentable in virtually all foreign countries.

In April 1994, Russo and Superior entered into negotiations for settlement of the Rhode Island Superior Court suit. Baxter was not involved in these negotiations. In exchange for $400,000 and a dismissal of Superior's suit against Russo, Russo signed a release of Superior. The language of the release includes, *inter alia,* Superior's agents and representatives. Russo and his attorney for the previous suit assert that this language was not intended to include Baxter and that Russo planned to sue Baxter separately for the disclosure of the device in December 1991. Baxter apparently did not give Russo any consideration for the settlement. Baxter argues, however, that the plain language of the release includes Baxter. Russo executed a

separate release for Carolyn and David Brodsky. On the same date that the release was executed, the parties filed a Stipulation of Dismissal with the Rhode Island Superior Court. Russo, David and Carolyn Brodsky, and representatives from Superior and Baxter signed the Stipulation, but Baxter was not included as a party in the text of the Stipulation. Superior's attorney stated in his affidavit that this omission was a mistake on his part. Russo and his attorney state that Baxter signed the Stipulation, even though Baxter was not a party to the settlement agreement between Russo and Superior, because all parties to a suit must sign in order to dismiss a case.

Subsequently, Russo filed suit against Baxter in federal court, alleging misappropriation of trade secrets, intentional interference with prospective contractual relations, and negligence. These causes of action arise from Baxter's alleged public disclosure of the design of the device in December 1991. Baxter has filed a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56, arguing that Russo's suit is barred by res judicata because of the previous state court case and by the written release of Superior and its representatives from liability. On September 15, 1995, Magistrate Judge Boudewyns issued a Report and Recommendation advising that Baxter's motion be granted. Russo has objected timely, and Baxter's motion is now before this Court.

## SUMMARY JUDGMENT

A federal court may grant summary judgment in a civil action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevent summary judgment, the evidence, viewed in the light most favorable to the non-moving party, must be sufficient to permit a rational factfinder to resolve the issue in favor of either side. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). The parties

in this case have submitted affidavits and documentary evidence, which this Court has relied upon in evaluating the defendant's Motion for Summary Judgment.

## THE ELEMENTS OF RES JUDICATA

Under the full faith and credit statute, 28 U.S.C. § 1738 (1994), federal courts must give state court judgments the res judicata effect that state law prescribes. *Isaac v. Schwartz,* 706 F.2d 15 (1st Cir.1983). As the prior suit relating to this case was brought in Rhode Island Superior Court, Rhode Island law regarding res judicata applies. According to the Rhode Island Supreme Court, a cause of action is barred in a subsequent proceeding if the prior litigation involved (1) the same parties, (2) the same issues, (3) the same claims for relief, and (4) finality of judgment. *Estate of Bassett v. Stone,* 458 A.2d 1078, 1080 (R.I.1983). Both Russo and Baxter were parties to the prior state court suit. The state court suit ended in settlement, which, under Rhode Island law, is considered a final judgment for purposes of res judicata. *D'Amario v. Butler Hosp.,* 921 F.2d 8, 10 (1st Cir.1990), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1008 (1991); *Belanger v. Weaving Corp. of America,* 120 R.I. 348, 387 A.2d 692, 693 (1978). Therefore, the question before this Court is whether the prior case involved the same claim and issues as the current case.

In order for the two cases to involve the same claim, they must have arisen from the same transaction or series of connected transactions. *Gonsalves v. Alpine Country Club,* 563 F.Supp. 1283, 1287 (D.R.I.1983), *aff'd,* 727 F.2d 27 (1st Cir.1984); Restatement 2d of Judgments, § 24. Courts have interpreted "same transaction" to mean actions based on a common nucleus of operative facts. *Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.,* 48 F.3d 576, 583 (1st Cir. 1995) (applying federal law of res judicata, which uses the same standards as Rhode Island law); *Schiavulli v. Aubin,* 504 F.Supp. 483, 487 (D.R.I.1980). The First Circuit has outlined several factors which courts may weigh in determining whether

two transactions are based on a common nucleus of operative facts:

> 1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations.... [I]t is often helpful to consider the nature of the injury for which the litigant seeks to recover.

*Apparel Art Int'l,* 48 F.3d at 584.

■ Clearly a plaintiff cannot escape res judicata merely by changing the legal theory for a second claim, *Dowd v. Society of St. Columbans,* 861 F.2d 761, 764 (1st Cir.1988); *Schiavulli,* 504 F.Supp. at 487, or by altering the relief sought, *Johnson v. SCA Disposal Serv.,* 931 F.2d 970, 975 (1st Cir.1991); *Miles Un-Limited v. Town of New Shoreham,* 602 F.Supp. 238, 239 (D.R.I.1985). In the original Rhode Island Superior Court case, Russo sued Baxter only for a preliminary injunction to prevent the execution of the contract between Superior and Baxter. In the present case, Russo has sued Baxter for damages arising from Baxter's alleged misappropriation of trade secrets, intentional interference with contractual relations, and negligence. However, these changes in the legal basis for the claim and in the relief requested do not, by themselves, meet the definition of a different claim. The factual underpinnings of these claims must be examined.

■ Baxter argues that, because the current claims stem from Baxter's marketing of the product and the state court case sought to enjoin the contract which authorized such marketing, the two suits arise from the same claim. However, according to the United States Supreme Court, the fact that a prior suit requested a preliminary injunction which, if granted, would have prevented the second suit from arising is not enough to make the two suits one cause of action. *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 328–29, 75 S.Ct. 865, 868–69, 99 L.Ed. 1122 (1955). While the execution of the option contract with Superior and the exhibition of the device at a convention were both presumably motivated by Baxter's desire to profit from the sale of this device, a common goal cannot be enough to establish a single claim. *Sierra Club v. Secretary of Transp.,* 779 F.2d 776, 779–780 (1st Cir.1985) (holding that two suits challenging the issuance of two construction permits from different agencies for the same bridge project did not constitute the same claim for res judicata purposes). The two suits are based on facts that are distinct in time, space, and origin. The state court case against Baxter related solely to a contract which was made in June 1990, whereas the current suit arose from Baxter's actions in December 1991 at a convention in Atlanta, Georgia.

■ To determine the similarity of the past and present suits, this Court must also consider whether the facts of the two actions form a convenient trial unit. *Apparel Art Int'l,* 48 F.3d at 584. In the state court suit, Russo sued Baxter only for a preliminary injunction to prevent the execution of the option contract with Superior. In order to have succeeded on this claim, Russo would have had to show that he would be irreparably harmed by the contract, that damages would be inadequate to compensate his loss, and that he was likely to succeed on the merits. *In re State Employees' Unions,* 587 A.2d 919, 925 (R.I.1991). Since Russo was not suing Baxter on any other claims, presumably the "merits" to be evaluated were his claims against Superior, alleging that Superior did not have authority to manufacture or sell the device. In contrast, Russo currently is suing Baxter for misappropriation of trade secrets, intentional interference with contractual relations, and negligence. First, as relevant to this case, misappropriation means disclosure of a trade secret of another by a person who knew or had reason to know that this knowledge was acquired under circumstances giving rise to a duty to maintain its secrecy or that this knowledge was derived from someone who owed the plaintiff a duty to maintain its secrecy. R.I. Gen. Laws § 6-41-1(B)(2). Second, to establish a claim of intentional interference with a contract, Russo must prove that a contract existed, that Baxter knew of the contract, that Baxter intentionally interfered with the contracts, and that damages resulted. *Scully Signal Co. v. Joyal,* 881 F.Supp. 727, 739 (D.R.I. 1995); *DiBiasio v. Brown & Sharpe Mfg.*

*Co.*, 525 A.2d 489, 493 (R.I.1987). Third, a negligence action requires proof that Baxter owed Russo a duty of care, that Baxter breached this duty, and that the breach caused Russo damages. *Montuori v. Narragansett Elec. Co.*, 418 A.2d 5, 9–10 (R.I.1980). All three of the current claims involve proof of Baxter's knowledge of the confidentiality of the device or proof of the direct interaction between Baxter and Russo. In contrast, the state court case turned in large part on the merits of Russo's claim against Superior. In the current case, the relationship between Russo and Superior is tangential or irrelevant.

▮ Finally, this Court must look to the parties' expectations regarding the first suit's preclusion of the second suit. *Apparel Art Int'l*, 48 F.3d at 584. Russo and his attorney in the state court suit have submitted affidavits asserting that when the first suit was settled, they specifically planned to sue Baxter at a later date for the December 1991 disclosure. Baxter has introduced no evidence of its expectations at the time the first suit was settled. In Baxter's Answer to the state court suit, Baxter acknowledges that the vast majority of the Counts in Russo's Complaint were not directed at Baxter. The one Count that did involve Baxter, a request for preliminary injunction of the contract with Superior, depended in large part on the merits of Russo's claim against Superior. No underlying claim against Baxter exists. In these circumstances, Baxter would have been unreasonable in believing that the state court suit should have encompassed claims arising from subsequent affirmative acts by Baxter against Russo. Because the two suits are based on facts which are distinct in time and space, because the two suits would not necessarily have been a convenient trial unit, and because the parties should not have expected the two suits to be combined, the previous state court case and the current case are not the same claim. Therefore, res judicata does not bar the current suit.

### RES JUDICATA FOR SUBSEQUENTLY ARISING CLAIMS

▮ Even if the current and past suits were based on the same claim, this suit will not be barred under res judicata. Russo argues that res judicata does not apply because the current suit is based on events that occurred after the first suit was filed. Clearly, a claim arising from facts that occurred after the first suit was settled would not be barred by res judicata. *Lawlor*, 349 U.S. at 328, 75 S.Ct. at 868–69. However, neither the Supreme Court nor the First Circuit nor the Rhode Island Supreme Court has addressed the question of whether claims arising from events that occurred after the filing of the first suit, but before that suit's resolution, are barred by res judicata. The Seventh Circuit discussed this issue in a breach of contract case in which the plaintiff did not know that the defendant was her employer until after the original negligence action was filed. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908 (7th Cir.1993). The circuit court stated, "If the plaintiff is unaware of facts when filing a complaint, res judicata will not bar subsequent litigation.... [P]laintiffs need not amend filings to include issues that arise after the original suit is lodged." *Id.* at 914–15; *see also Green v. Illinois Dep't of Transp.*, 609 F.Supp. 1021, 1024–25 (N.D.Ill. 1985) (holding that plaintiff's racial harassment and failure to promote suit did not bar later suit for racially-motivated termination which occurred after the original suit was filed). The Ninth Circuit held that, where the parties agreed that segregative acts prior to the trial date would be included in the claim, a subsequent suit based on segregative acts during the trial prior to the judgment would not be barred. *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739–40 (9th Cir.1984), *cert. denied*, 474 U.S. 919, 106 S.Ct. 247, 88 L.Ed.2d 256 (1985). That court found:

> The scope of litigation is framed by the complaint at the time it is filed. The rule that a judgment is conclusive as to every matter that might have been litigated "does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated." ... We decline to impose a potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost.

*Id.* The District of Columbia Circuit arrived at the same conclusion in the context of underpaid pension contributions, where the contributions occurred during a suit to recover prior underpayments to the same fund. *I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg. Co.,* 723 F.2d 944, 948–49 (D.C.Cir.1983).

The Eleventh Circuit has held that a plaintiff need not amend the original pleadings to include claims based on subsequent events, stating, "Under the Federal Rules, the filing of supplemental pleadings is optional for the plaintiff; the existence of the doctrine of res judicata does not make the filing of supplements mandatory." *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992); *see also Dillard v. Security Pacific Brokers, Inc.,* 835 F.2d 607, 609 (5th Cir.1988) (holding that counterclaims which arose after the defendant's answer would not be barred by res judicata in a second suit, even if they arose out of the same transactions as the plaintiff's claim). The Rhode Island Rules of Civil Procedure regarding supplemental pleadings are parallel to the Federal Rules of Civil Procedure: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading, setting for transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." R.I.Sup.Ct. R.Civ.P. 15(d); *cf.* Fed.R.Civ.P. 15(d).

Since all the circuit courts that have confronted this issue have refused to apply a res judicata bar to claims arising after the original lawsuit was filed, the Rhode Island courts would likely follow suit. Any other result would be unworkable; parties cannot be required to add to their original suits claims that arise on the eve of trial, and any cut-off after the filing date would be arbitrary and unwieldy. In this case, the present suit has arisen from Baxter's alleged public disclosure of the device which Russo invented at a convention in December 1991. Because the state court case was filed in June 1990, the current claims are based on an event which occurred almost one-and-a-half years after the original suit was filed. Under R.I.Sup. Ct.R.Civ.P. 15, Russo was not required to supplement his original pleadings as a result of this subsequent event. Thus, claims based on that subsequent event cannot now be barred by res judicata.

## VALIDITY OF RELEASE

■ In April 1994, the state court case was settled. Russo signed a release, which reads in pertinent part:

> Russo will not sue for any reason and hereby remises, releases and quitclaims unto and forever discharges Superior Healthcare Group, Inc., Superior Biosystems, Inc., their respective parents, subsidiaries, affiliates, directors, officers, agents, representatives, servants, employees, successors, assigns, attorneys and each and every one of them ("Superior") of and from any and all claims, actions, causes of action, grievances, arbitrations, charges, complaints, suits, proceedings, debts, controversies, liabilities, agreements, judgments, damages, losses, and demands whatsoever, including interest, costs and attorneys' fees, in law and/or equity ("claims"), which Russo ever had, now has, and/or may have against Superior from the beginning of time to the date of this General Release....

Baxter now argues that this release also covered Baxter, as Superior's representative. This Court must thus determine whether Russo has presented any genuine issues of material fact relating to Baxter's coverage by the release.

In a Rhode Island Supreme Court case, *Lennon v. MacGregor,* the plaintiff had signed an agreement which purportedly released one named tortfeasor and "all other persons, firms or corporations." 423 A.2d 820, 821 (R.I.1980). Other joint tortfeasors not involved in the agreement later claimed that they were covered by the agreement's language. *Id.* The court stated, "Whereas the construction of a clear and unambiguous contract presents an issue of law which may be resolved by summary judgment, *Cassidy v. Springfield Life Ins. Co.,* [106 R.I. 615, 262 A.2d 378, 380 (1970)], an ambiguous contract may not properly be resolved on summary judgment, *O'Connor v. McKanna,* [116 R.I. 627, 359 A.2d 350, 353 (1976)]." *Id.* at 822.

Because the "all other persons" language conflicted with later provisions of the release, the court found that the release was ambiguous and reversed the summary judgment for the defendants. *Id.* at 822–23.

In *McInnis v. Harley–Davidson Motor Co.,* 625 F.Supp. 943 (D.R.I.1986), the plaintiff had signed a similar release. After an exhaustive review of the interpretation of such releases in different states, the court held that Rhode Island law would allow a general release to discharge unnamed joint tortfeasors only if the parties to the release intended that result. *Id.* at 949. The court wrote, "To preclude redress on the basis of a legal fiction arising from the chance insertion of boilerplate wording in a printed form of release procured by one other than the defendant is at odds both with fundamental fairness and with the threads which bind together the fabric of Rhode Island's judge-made tort law." *Id.* at 954–55. The Rhode Island Supreme Court cited the *McInnis* decision with approval in *Pardey v. Boulevard Billiard Club,* 518 A.2d 1349, 1354 (R.I. 1986). In *Pardey,* the passenger in a drunk driving accident had signed a release which named the driver "and any and all persons," but the passenger later sued the bar that had served alcohol to the driver. *Id.* The court remanded for a hearing on the possible preclusive effect of the release, directing that "the trial justice should consider the intent of the parties, the nature of consideration, and the questions of whether plaintiff Pereira was represented by counsel, whether the release was procured through fraud, misrepresentation, overreaching, or material mistake...." *Id.* at 1355, *appeal after remand sub nom., Pereira v. Tellier,* 583 A.2d 523 (R.I.1990) (holding that evidence supported lower court's finding that plaintiff did not intend to release defendant). Although these Rhode Island cases have involved settlement of tort suits, the modern trend is to apply the same rule to contractual suits as well. *Hermes Automation Tech., Inc. v. Hyundai Elec. Indus. Co.,* 915 F.2d 739, 746 (1st Cir. 1990) (holding that Massachusetts would likely follow this modern trend).

In the case before this Court, the language of the release does not clearly identify Baxter, but instead refers to Superior's "representatives." Even using the U.C.C. definition of representative as "an agent, an officer of a corporation of association, and a trustee, executor or administrator of an estate, or any other person empowered to act for another," R.I.Gen.Laws § 6A–1–201(35), whether Baxter was empowered to act for Superior is unclear. The contract between Baxter and Superior purports to grant to Baxter exclusive distribution rights of the product, in exchange for money and a promise to advertise the product. Baxter and Superior appear to have been two independent business entities engaged in pursuing their mutually advantageous self-interests, rather than one company acting as the other's representative.[1] The contract contains no provision permitting Baxter to act on behalf of Superior, and, in fact, the agreement could become non-exclusive if certain conditions were not met. Since the term "representative" has an ambiguous meaning in this context, this Court must examine extrinsic evidence to interpret the release.

The plaintiff has submitted affidavits from Russo and from his attorney in the prior litigation. Both of them state that Russo specifically did not execute a release for Baxter in order to retain his right to sue Baxter later and that the release of Superior was not intended to release Baxter. Russo Aff. ¶¶ 17–21; Cannon Aff. ¶¶ 5–7. Notably, even though David Brodsky acted as Superior's agent and representative and was therefore facially covered by the language of Russo's release of Superior, Russo executed a separate release for Brodsky. Neither party alleges that Baxter was involved in the settlement negotiations which led to the release or that Baxter provided Russo with any consideration for the release. Baxter did sign the Stipulation of Dismissal of the state court case but was not named as a party in the text of the Stipulation. The defendant has produced evidence that the omission of Baxter's name from the text was the attorney's mis-

---

1. The Court does not find Baxter's citation to Florida state courts' interpretation of "representative" as used in Florida's venue statute, *Scripto,* *Inc. v. Carson,* 105 So.2d 775 (Fla.1958), relevant to the instant case.

take. Reid Aff. ¶¶ 5–6. The plaintiff, however, has submitted evidence that Baxter signed the Stipulation because that was the only way to effectuate the dismissal of the entire case, not because Baxter was a party to the settlement agreement. Cannon Aff. ¶ 5. This type of factual dispute makes summary judgment inappropriate.

As discussed above, the term "representative" as used in Russo's release of Superior is ambiguous. Thus, under *Pardey,* the Court must look to the context of the release's execution. 518 A.2d at 1355. The plaintiff has produced evidence which has raised genuine issues of fact regarding the parties' intent in signing the release, the absence of consideration received from Baxter, and the purpose of Baxter's inclusion on the Stipulation of Dismissal.

## CONCLUSION

For the foregoing reasons, Baxter's Motion for Summary Judgment is denied.

SO ORDERED: