Richard G. CRIBB et al.

v.

Peter AUGUSTYN.

No. 95–573–Appeal.

Supreme Court of Rhode Island.

June 3, 1997.

Daniel P. McKiernan, for Plaintiff.

Edward P. Sowa, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter came before a panel of this Court pursuant to an order directing the defendant, Peter Augustyn (Augustyn) to appear and show cause why the issues raised in this appeal should not be summarily decided. Augustyn appeals from a final judgment entered in the Providence Superior Court in favor of the plaintiffs, Richard G. and Jacqueline Cribb, (the Cribbs). The Superior Court jury awarded the Cribbs $64,062.97 plus interest and costs in a civil action against Augustyn. After reviewing the memoranda submitted and hearing oral arguments thereon, we conclude that cause has not been shown. The appeal is hereby denied and dismissed, the judgment appealed from is affirmed, and the papers are remanded to the Superior Court.

The pertinent facts are as follows. The Cribbs are Rhode Island residents and the owners of a ski chalet in Bartlett, New Hampshire. In January 1987 the Cribbs agreed to rent their chalet to Augustyn, also a Rhode Island resident, for a weekend of skiing. The rental agreement was both negotiated and entered into in Rhode Island. Unfortunately, before that weekend rental was over, the chalet was damaged by a fire that the Cribbs alleged was caused by the negligence of Augustyn. To recover for their loss, the Cribbs filed a civil negligence action on March 21, 1991, against Augustyn in the Providence County Superior Court in which they sought damages for the destruction of

their chalet. Service on Augustyn, in Rhode Island, was made on March 26, 1991.

In his answer to the Cribbs' complaint Augustyn denied all allegations of any negligence on his part and in special defense to the action gave notice of intention to rely upon the law of New Hampshire where, accordingly, the Cribbs' action was time barred. The Cribbs moved to strike the statute of limitations defense. After hearing in the Superior Court, the Cribbs's motion was granted. Augustyn sought review of the decision granting the motion to strike by petition for certiorari here in this Court. That petition was denied, and the case later proceeded to trial before a jury in the Superior Court.

The trial evidence indicates that Augustyn went to the chalet on January 9, 1987, with a group of friends and that during the following evening, on January 10, 1987, they decided at about 7 p.m. to light a fire in the chalet fireplace. Augustyn testified that when the group later retired for the night, the wood embers in the fireplace were still glowing. He further testified that during the night the fire had apparently burned itself out and that the following morning he cleaned out the fireplace. In doing so, he used a cardboard box to transport the wood ashes out of the chalet and he put them into the snow. He said that he then placed the empty cardboard box on a pile of firewood that was stacked against the outer wall of the chalet and left to go skiing for the day with the rest of the group. Augustyn also testified that he did not see any glowing wood embers when he swept the ashes into the cardboard box but that he did not look inside the box to check for any burning embers remaining in the box when he placed it on the wood pile.

Later in the day, one member of the ski group, Nancy Nelson, returned to the chalet early. She testified that while inside the chalet she heard a crackling sound and went outside to investigate. She discovered that a fire had started on the wood pile in the area where the cardboard box had been placed, and she immediately proceeded to telephone the fire department. Alexander Patton, Ph.D. (Patton), a mechanical engineer, was called to testify during the trial for the Cribbs for the purpose of offering expert opinion testimony regarding the cause and the origin of the fire. On the basis of deposition testimony and the pertinent fire reports that he reviewed prior to trial, he opined that a live ember from the fireplace had remained in the cardboard box and ignited the box and eventually the wood pile, causing the fire that damaged the chalet. He rejected any theory that the fire had been caused by faulty electrical wiring or by a leaking propane tank.

Roger Labbe (Labbe), the fire chief of Bartlett, New Hampshire, and the individual in charge of the firefighters when they extinguished the blaze at the Cribbs' chalet, also testified as a witness for the Cribbs. He opined on the basis of the burn pattern he observed, that the blaze originated from the woodpile. It was also through Labbe that the Cribbs introduced the report of Darwin Lewis (Lewis), an investigator from the State of New Hampshire Fire Marshal's Office, who died sometime prior to the time of trial. Lewis's report indicated that the origin of the fire was the woodpile.

The jury returned a verdict in favor of the Cribbs and awarded them damages in the amount of $64,062.97. Augustyn's motion for a new trial was denied; final judgment was entered on the jury's verdict, and Augustyn claimed his appeal to this Court.

Augustyn raises three issues for our consideration. He first asserts that the trial justice erred in granting the Cribbs' motion to strike the statute of limitations defense. He contends that New Hampshire's statute of limitations that would have barred the Cribbs' action should have been applied to the case rather than Rhode Island's. Second, Augustyn asserts that the trial justice erred in admitting the fire inspection report by Lewis, the deceased investigator for the New Hampshire Fire Marshal's office. Third, he contends that the jury was improperly permitted to render a verdict based upon a pyramiding of inferences.

In addressing the statute of limitations question, we note that under New Hampshire law the applicable statute of limitations would have required the Cribbs to have com-

menced their action within three years of the date of the fire. The fire occurred on January 11, 1987. The Cribbs' action, filed on March 21, 1991, would then have been time barred had New Hampshire law applied. Under Rhode Island law, G.L.1956 § 9–1–13(a), the applicable statute of limitations is ten years, and the Cribbs' action would not thus be time barred.

■ We take up first Augustyn's contention that the trial justice erred in striking his statute of limitations defense based upon New Hampshire law and in then applying the Rhode Island statute of limitations to plaintiffs' claim. His contention appears grounded in what is known as the *lex loci delicti* conflict of law doctrine. In this jurisdiction we do not follow that doctrine or rule, having abandoned it some many years ago in *Woodward v. Stewart*, 104 R.I. 290, 299, 243 A.2d 917, 923, *cert. denied*, 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968). We follow instead the interest-weighing approach. In so doing, we look at the particular case facts and determine therefrom the rights and liabilities of the parties "in accordance with the law of the state that bears the most significant relationship to the event and the parties." *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I.1986), *see also Putnam Resources v. Pateman*, 958 F.2d 448, 464 (1st Cir.1992); *Blais v. Aetna Casualty & Surety Co.*, 526 A.2d 854, 856–57 (R.I. 1987); *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176 (1969). That approach has sometimes been referred to as a rule of "choice-influencing considerations." *See* Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law*, 41 N.Y.U. L.Rev. 267, 282 (1966).

■ In applying the interest-weighing or choice-influencing considerations, we consider as noted in *Pardey*, 518 A.2d at 1351:

"(1) predictability of result;

"(2) maintenance of interstate and international order;

"(3) simplification of the judicial task;

"(4) advancement of the forum's governmental interests; and

"(5) application of the better rule of law."

We also consider the particular factors pertaining in each case setting as noted in *Woodward* and *Brown* as well as in Restatement (Second) *Conflict of Laws*, § 145(2) at 414 (1971) which provides:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicile, residence, nationality, place of incorporation

and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered."

■ In this case the fire and damages resulting to plaintiffs occurred in New Hampshire. Thus the (*a*) and (*b*) factors would weigh in favor of the application of the New Hampshire law. However, the (*c*) and (*d*) factors favor application of Rhode Island law. All the parties are domiciled residents of Rhode Island, and the contractual relationship between the parties was negotiated and consummated here in Rhode Island. In addition, at the time of the filing of the instant action, all the parties were still domiciled, living and employed in Rhode Island. In *Brown*, 105 R.I. at 326–27, 252 A.2d at 179, we stated that in situations in which the factors (*a*) and (*b*) are the only ones pointing to the law of another state and factors (*c*) and (*d*) point strongly to applying Rhode Island law, the latter two factors trump the earlier two, and Rhode Island law is applied. The trial justice did not err in applying the Rhode Island statute of limitations to the Cribbs' claim and action.

We believe, in so concluding, that we further this forum's law because Rhode Island, rather than New Hampshire, has the greater interest in determining the time period in which Rhode Island residents may sue or be sued for tort claims arising out of a contractual relationship that had its origins in this state. Furthermore, because we do not believe New Hampshire has any real interest in this dispute, we conclude that our decision will not offend the maintenance of interstate order. Finally, we believe that the parties would have expected Rhode Island law to apply in resolving their dispute, and thus our decision advances the predictability of judicial determinations.

The next contention advanced by Augustyn involves the admission by the trial justice of the report prepared by Lewis. Over Augustyn's hearsay objection, the trial justice admitted the report under Rule 803(8)(C) of the Rhode Island Rules of Evidence, which permits the admission of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

Augustyn contends that the factual findings in Lewis's report indicate a lack of trustworthiness by virtue of the fact that the report included the following statement:

"Entries contained in this report are intended for the sole use of the State Fire Marshal. Estimations and evaluations made herein represent 'most likely' and 'most probable' cause and effect. Any representation as to the validity or accuracy of reported conditions outside the State Fire Marshal's Office is neither intended nor implied."

He also contends that the report does not fall within the exception created by Rule 803(8)(C) because it contains opinion in addition to bare facts. We are not persuaded by either contention.

■ Rather, we conclude, as did the Supreme Court of the United States, that the phrase contained in Rule 803(8)(C) "factual findings" encompasses more than a recitation of facts. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 164, 109 S.Ct. 439, 447, 102 L.Ed.2d 445, 459 (1988). Had the rules of evidence intended to limit this exception to include reports reciting only facts it would have stated so. However, it employs a term that includes "conclusions or opinions that flow from a factual investigation." *Id.* The report in question, with its opinions based upon the investigator's factual investigation, falls within the exception created by Rule 803(8)(C).

■ Turning to the question of trustworthiness, we begin by considering the four trustworthiness factors proposed by the Advisory Committee of the Rhode Island Rules of Evidence. These factors include (1) the timeliness of the investigation upon which the report is based, (2) the skill and the experience of the investigating official, (3) the question of whether any hearing was held, and (4) the possible bias of the investigator. *See R.I. R. Evid. Adv. Committee Notes to Rule 803(8)(C)* at 997.

In the instant case those factors suggest only the conclusion that Lewis's report is trustworthy. All that might serve to undermine the accuracy of his report is a preprinted statement contained on the report that belies the accuracy of the report for use beyond the fire marshal's office. Even though the reason for the limited disclaimer statement is not explained, we believe that this statement merely suggests that it was prepared primarily for the use of the fire marshal's investigation and its office report procedure, but that limitation fails to expressly affect its reliability when viewed beyond the fire marshal's office. Considering Lewis's experience and skill, and the timeliness with which his report was prepared, we are persuaded that the trial justice did not abuse his discretion in admitting the report.

■ With respect to Augustyn's final contention concerning pyramiding of inferences, we have previously held that a jury's inference of negligence must rest upon more than mere "conjecture, speculation, or surmise," *Montuori v. Narragansett Electric Co.*, 418 A.2d 5, 9 (R.I.1980), and that it is improper to draw an inference based upon an inference. *Waldman v. Shipyard Marina, Inc.*, 102 R.I. 366, 230 A.2d 841 (1967). However, in this case we conclude that the jury could properly conclude that the fire had been caused by the negligence of Augustyn without improperly "pyramiding inferences." Unlike the case facts in *Montuori*, the expert testimony here indicated that the fire was "most probably" caused by hot ashes left in the cardboard box. Additionally, expert testimony excluded electrical wiring or a leaky propane tank as a possible source of the fire. The jury's determination in regard to causation deriving from live embers in the cardboard box could properly be drawn, based upon the totality of the trial evidence.

For the foregoing reasons the defendant's appeal is denied and dismissed, and the final judgment appealed from is affirmed. The

papers of the case are remanded to the Superior Court.

FLANDERS and GOLDBERG, JJ., did not participate.