[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for decision following a non-jury trial on a complaint by The Berkshire Mutual Insurance Company (Berkshire) against the defendants, Allstate Insurance Company (Allstate), and its insured, Arkadi Marchikov (Marchikov). The plaintiff seeks reimbursement from Allstate for medical payments Berkshire made to Annamaria Doherty (Doherty), following an automobile accident between Doherty and Marchikov. Jurisdiction is pursuant to R.I.G.L. 1956 § 8-2-13 and § 8-2-14.
 FACTS AND TRAVEL
The parties have stipulated to the pertinent facts which include:
 1. Berkshire issued an automobile insurance policy to William Doherty which was in effect at the time of the accident.
 2. Allstate issued an insurance policy to Arkadi Marchikov which was in effect at the time of the accident.
 3. On or about October 11, 1997, Arkadi Marchikov struck Mr. Doherty's vehicle from behind, injuring Mr. Doherty's daughter.
 4. As a result of the accident, Ms. Doherty was treated for back and neck injuries at Merolla Chiropractic.
 5. Neither Mr. Marchikov nor Allstate dispute Mr. Marchikov's liability for the accident and resulting injuries to Ms. Doherty.
 6. On December 22, 1998, Berkshire paid Merolla Chiropractic medical expenses of $5,410 for treatment of the injuries to Mr. Doherty's daughter, as required by the Personal Injuries Protection (PIP) provision of Mass. Gen. Laws Ch. 90 § 34M.
 7. Mr. Marchikov and Allstate settled with Mr. Doherty's daughter. A release was signed on January 13, 1999 and Allstate issued payment on January 18, 1999.
 8. On July 1, 1999, Berkshire wrote to Allstate requesting reimbursement for PIP payments.
 9. Allstate has declined to reimburse Berkshire for medical expenses Berkshire paid under the PIP provision of the policy ($5,410).
 10. Berkshire has not been reimbursed for the $5,410 in medical expenses it paid under the PIP provision of the policy.
Another noteworthy fact, not stipulated to by the parties, is the settlement Allstate reached with Ms. Doherty in the amount of $7,475.
 STANDARD OF REVIEW
"In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Super. R. Civ. P. 52. In a non-jury trial, the "justice sits as a trier of fact as well as of law. Consequently, [she] weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences. [She] need not view the evidence in a light most favorable to a plaintiff." Hood v. Hawkins, 478 A.2d 181,184 (R.I. 1984). This rule does not require an extensive analysis of the evidence, and the trial judge need only make specific findings on factual issues pertinent to the dispositive legal questions. Shoar-Elias GlassCo. v. Raymond Constr. Co., 114 R.I. 714, 339 A.2d 250 (1975).
 CHOICE OF LAW
In 1968, Rhode Island adopted the "interest weighing approach" to deal with choice of law problems. Woodward v. Stewart, 104 R.I. 290,243 A.2d 917 (1968). The Rhode Island Supreme Court noted: "[u]nder this approach, "we look at the particular case facts and determine therefrom the rights and liabilities of the parties in accordance with the law of the state that bears the most significant relationship to the events and the parties."" Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255
(R.I. 2001) (quoting Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997)). Our Supreme Court recently reaffirmed the use of the interest weighing approach. Taylor v. Mass. Flora Realty, Inc., 840 A.2d 1126 (R.I. 2004) (applying Massachusetts negligence law to case). In order to determine which law applies, a court must examine factors that include: "predictability of result; maintenance of interstate and international order; simplification of the judicial task; advancement of the forum's governmental interests; and application of the better rule of law."Pardey v. Boulevard Billiard Club, 518 A.2d 1349, 1351 (R.I. 1986). "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless with respect to the particular issue, some other state has a more significant relationship." Blais v. Aetna Casualty Surety Co.,526 A.2d 854, 856-857 (R.I. 1987) (quoting Restatement (Second) Conflictof Laws § 146 (1971)). A court should also consider "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties, and the place where the relationship, if any, between the parties is centered." Najarian,768 A.2d at 1255 (quoting Brown v. Church of the Holy Name of Jesus,252 A.2d 176 (R.I. 1969)); Restatement (Second) Conflict of Laws § 145(2) (1971).
In the case at bar, two insurance companies are attempting to bring final resolution to a dispute arising out of an automobile accident. The choice of law does not pertain to a dispute about which laws of negligence to apply in order to determine fault. Indeed, while Rhode Island law may apply to determine liability regarding the automobile accident in this case, there is no question of fault before this Court. The question here is whether the insurance law of Rhode Island or Massachusetts applies. Allstate challenges the applicability of the Massachusetts statute to this case, while Berkshire alleges that their compliance with M.G.L. ch. 90 § 34M grants them a right of reimbursement against Allstate. If Massachusetts law applies, Berkshire will be entitled to an award of such reimbursement.
Here, this Court must weigh the competing interests of all parties. The accident and resulting injury took place in Rhode Island Massachusetts, however, "has a more significant relationship" because both Doherty and Berkshire are Massachusetts citizens. The relationship between Doherty and Berkshire is centered in Massachusetts. Taylor, 840 A.2d at 1128
(citing Najarian and Brown supra). The issue arises out of the payment of PIP medical payments from Berkshire to Doherty, a transaction that occurred solely in Massachusetts and one that is mandated by Massachusetts state law under M.G.L. ch. 90 § 34M. Embodied in this no-fault legislation are Massachusetts' significant interests in reducing automobile insurance rates and protecting drivers through expeditious payment of PIP benefits in personal injury cases. See Brown v. Church ofthe Holy Name of Jesus, 252 A.2d 176 (R.I. 1969) (recognizing state's policy better than another state's conflicting policy where significant government interest exists).
Massachusetts citizens and their insurers must be able to count on the applicability of a statute that seeks to protect all involved and make more efficient the often tangled and confusing process of insurance reimbursement. Just as insurers and insureds in Massachusetts should be able to count on the predictability of the result in such disputes, so too should other insurance companies outside Massachusetts, which may encounter such PIP reimbursements when dealing with a Massachusetts insurer, as was the case here. See Pardey, 518 A.2d at 1352 (stating predictability allows parties to understand consequences of course of action). To advance Massachusetts' governmental interests, maintain interstate order, provide a predictable result, and simplify the judicial task, this Court will apply the Massachusetts law. Id. at 1351 (stating factors court should examine when making choice of law decisions).
 ANALYSIS
Plaintiff (Berkshire) argues that its right to reimbursement arose upon paying Doherty for her medical expenses under PIP provisions. Additionally, Berkshire contends that the settlement and release Allstate negotiated with Doherty makes no mention of PIP payments or medical expenses. Berkshire was not even a party to the settlement, which Allstate conducted and controlled. Berkshire thus argues that the release does not foreclose its right of reimbursement from Allstate for PIP payments.
Allstate argues that Berkshire did not comply with statutory provisions in dispensing the PIP payment, and therefore, has no right to reimbursement. Allstate opines that Rhode Island law should apply, thereby nullifying any claim Berkshire has to PIP payment reimbursement. Allstate also suggests that in order for Berkshire to demand a decision in equity, it must have "clean hands," but arguably does not. Allstate alleges that Berkshire's allegedly "unclean hands" result from failures in communication between Allstate and Berkshire with regard to whether or not PIP payments had or would be made to Doherty.
The Court notes that the evident breakdown in or failure of communication between the Allstate and Berkshire claims representatives is a basis of this dispute. Had communications been more diligently made and carefully tracked, this matter would likely have been settled or decided much sooner. Additionally, Berkshire should have been a part of the settlement process between Allstate and Doherty.
The Supreme Court of Rhode Island recognizes that subrogation is "a device adopted by equity to compel the ultimate discharge of an obligation by the party who in good conscience ought to pay it." UnitedStates Inv. Dev. Corp. v. Rhode Island Dep't of Human Services,606 A.2d 1314, 1317 (R.I. 1992). "Subrogation is designed to promote and to accomplish, and is the mode which equity adopts to compel the ultimate payment by one who, in justice, equity and good conscience, should pay it." R.I. Hosp. Trust Nat'l Bank v. Feriole, 1980 R.I. Super. LEXIS 56, *6 (citing Tishman Realty Contr. Co. v. Schmitt, 330 N.Y.S.2d 174, 177-78 (1972)).
This Court finds that Allstate entered into settlement and release negotiations without including Berkshire in any of the communications, even though Allstate had knowledge that Berkshire insured Doherty. The settlement reached made no mention of Berkshire, PIP payments, medical expenses, or Berkshire's right to seek reimbursement through subrogation, etc. The release cannot serve to bar Berkshire's claim for reimbursement, especially in light of the fact that Berkshire paid the medicals approximately 3-4 weeks prior to Allstate's settlement. SeeAllstate Ins. Co. v. Mazzola, 175 F.3d 255, 260 (2d Cir. 1999) (holding subrogation right not barred by release where third party has knowledge of subrogation rights). Berkshire paid Doherty under the PIP provisions on December 22, 1998; however, Allstate did not obtain a signed release until January 13, 1999. "In general, a no fault insurer's right of indemnity accrues upon the date of payment to its insured." 16 Lee R. Russ Thomas F. Segalla, Couch on Insurance § 225:82 (3d ed. 2000). Berkshire's payment was made in good faith in compliance with M.G.L. ch. 90 § 34M.
This Court also finds that Allstate had knowledge of the medical expenses, as well as knowledge of the requirement that Berkshire make PIP payments under Massachusetts law. Both Allstate and Berkshire are sophisticated companies which handle a multitude of similar claims and are charged with knowledge of standard insurance industry practices, especially those involving settlements and PIP payments. As the party conducting the settlement negotiations, Allstate had an obligation to inform Doherty's insurer, Berkshire, of pending negotiations in order to effectuate an equitable settlement. "[A]n insurer must act in a reasonable manner and in good faith in settling third-party claims against its insured." Med. Malpractice Joint Underwriting Ass'n of RhodeIsland v. Rhode Island Insurers' Insolvency Fund, 703 A.2d 1097, 1101
(R.I. 1997) (citing Bibeault v. Hanover Ins. Co., 417 A.2d 313, 318
(R.I. 1980)). Simply inquiring whether there had been any PIP payment was not enough. Allstate failed to ascertain accurately and adequately the status of Berkshire's payments by not inquiring with Berkshire just before the settlement date. As stated above, the application of M.G.L. ch. 90 § 34M grants Berkshire a right of reimbursement from Allstate.
 CONCLUSION
After careful review of the entire record, this Court finds that the application of the Massachusetts statute, as well as principles of equity, demands Allstate reimburse Berkshire for the PIP payments made to Doherty, totaling $5,410. Accordingly, judgment shall enter for the Plaintiff. Counsel shall submit appropriate judgment for entry in accordance with this decision.