**Shirley BOOTEN, Administratrix of the Estate of Allen D. Booten, II and Shirley Booten, Individually, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ.A. 99–11229–EFH.**

United States District Court, D. Massachusetts.

May 3, 2000.

Brian R. Cunha, Brian Cunha & Associates, Fall River, MA, for Shirley Booten, plaintiff.

Mary Elizabeth Carmody, United States Attorney's Office, Worcester, MA, for U.S.

Thomas Rocco, MD, Bristol, RI, William F. White, White & Galamaga, Providence, RI, for Thomas Rocco, M.D.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

### STATEMENT OF THE CASE

This matter is before the Court on the Defendant's Motion to Dismiss Counts VII – IX[1] of the Further Amended Complaint and Jury Claim (the "Complaint") pursuant to Fed.R.Civ.P. 12(b)(1), or, in the alternative, Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(b), for lack of subject matter jurisdiction. This cause of action arises from the circumstances surrounding the death of Allen D. Booten, II (the "decedent"), at the Defendant's Veterans' Affairs (VA) Medical Center in Providence, Rhode Island. The Plaintiff, Shirley Booten, the decedent's wife, sole beneficiary, and at the present time[2] administratrix of the decedent's estate, brings Counts VII – IX pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680. Count VII asserts a claim against the defendant for medical negligence in its treatment of the decedent. Count VIII asserts a claim for wrongful death which is alleged to have been a proximate result of the defendant's treatment of the decedent. Count IX asserts a claim for loss of consortium arising from the decedent's death. The FTCA is a limited waiver of the United States' sovereign immunity which allows a claimant to bring a cause of action against the

---

1. Counts VII – IX are the only counts remaining.

2. Plaintiff was duly appointed administratrix on July 29, 1999.

United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Therefore, while the plaintiff necessarily brings her claims pursuant to the FTCA, the merits of her claims are determined by the law of the state in which the act or omission occurred—in this case the State of Rhode Island.

The defendant's motion contends that the plaintiff failed to satisfy the jurisdictional notice requirement of Section 2675 of the FTCA because: (1) the plaintiff lacked the requisite authority to file her administrative claims when she did because at that time she was not the duly appointed "full" administratrix of the decedent's estate, but merely a voluntary administratrix without any authority under Massachusetts law to bring or settle her wrongful death claims, and (2) the plaintiff did not properly present her administrative claims as required by Section 2675(a) because she did not respond to the defendant's requests for evidence to substantiate her claims as required by 28 C.F.R. §§ 14.1–14.11. For the reasons stated below, the defendant's motion is denied.

### STANDARD FOR SUMMARY JUDGMENT

When the parties have added documents outside the pleadings to a motion to dismiss and the Court uses these documents in making its determination, the Court may treat the motion as a motion for summary judgment under Fed.R.Civ. Proc. 56. *See C.B. Trucking, Inc. v. Waste Management, Inc.,* 137 F.3d 41, 43 (1st Cir.1998). Since, in its consideration of the defendant's motion, the Court has relied upon documents beyond the pleadings, the defendant's motion is adjudicated under the summary judgment standard.

A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to defeat a motion for summary judgment, the party resisting a motion must demonstrate the existence of "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997). Although the party asserting federal jurisdiction has the burden of proving that the Court has jurisdiction, in deciding a motion for summary judgment, the Court must examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." *Id.*

### BACKGROUND

This controversy arises from the circumstances surrounding the death of Allen D. Booten, II (the decedent), a veteran of the United States Navy who was honorably discharged in 1960. Prior to his death, the decedent and the plaintiff were residents of Massachusetts, which is also the venue of the decedent's estate. The Complaint alleges that the decedent was admitted to the Defendant's VA Medical Center in Providence, Rhode Island, on January 14, 1997, and on the following day underwent an allegedly radical and unnecessary surgery to remove his esophagus. As a result of the surgery, which was performed by the defendant's agents, the decedent developed a series of medical problems which culminated in brain damage and in his slipping into a coma. The Complaint alleges that the decedent ultimately died while still in the defendant's care at its VA hospital in Rhode Island when on March 10, 1997, Dr. Thomas Rocco, an agent of the defendant, administered a fatal dose of morphine sulphate.

The plaintiff alleges that the decedent's death was the proximate result of the negligence of the defendant and its agents. As such, on September 15, 1998, the plaintiff filed two written administrative claims

(one for loss of consortium and other for wrongful death) on the Standard Form 95 against the United States pursuant to the FTCA. The VA acknowledged the receipt of plaintiff's claims. Over the next several months, the plaintiff and the defendant engaged in a series of correspondences. The defendant alleges that the plaintiff failed to respond to its reasonable requests for information regarding the plaintiff's authority to pursue her claims, as well as for information to substantiate her claims. The plaintiff contends that she responded to all such reasonable requests and, when six months after she had filed her administrative claims it became evident that the defendant was unwilling to settle her claims, she filed this lawsuit on June 7, 1999.

At the time that the plaintiff filed her administrative claims, she was a voluntary administratrix of her husband's estate. Contemporaneous with filing this current lawsuit, the plaintiff petitioned the Massachusetts Probate and Family Court to be appointed the "full" administratrix of the decedent's estate. The plaintiff was so appointed on July 29, 1999, and the Complaint was so amended to reflect this on October 21, 1999.

### DISCUSSION

■ Congress has restricted a plaintiff's access to federal court under the FTCA by creating an administrative procedure that claimants must follow and exhaust before they may file a complaint in court. *See* 28 U.S.C. § 2675; *Corte-Real v. United States,* 949 F.2d 484, 485 (1st Cir.1991). The failure to file an administrative claim with the appropriate federal agency within two years after the claim's accrual results in the dismissal of the plaintiff's claim because the filing of an administrative claim is a non-waivable jurisdictional requirement which cannot be satisfied retroactively. *See McNeil v. United States,* 508 U.S. 106, 111, 113 S.Ct. 1980, 1983, 124 L.Ed.2d 21 (1993); *Santiago–Ramirez v.*

*Secretary of Dept. of Defense,* 984 F.2d 16, 18–19 (1st Cir.1993).

### I. Authority to File an Administrative Claim

The question presented by the defendant's first contention is whether under the FTCA the plaintiff had the legal authority to file administrative claims for her husband's allegedly wrongful death. The defendant argues that the plaintiff lacked the requisite authority to file such claims because she was merely a voluntary administratrix who had no legal authority under Massachusetts law to pursue or settle a wrongful death claim. The defendant's argument fails for two reasons: first, under federal case law, any individual who qualifies as a potential beneficiary under the applicable state's wrongful death statute has the authority to file an administrative claim for wrongful death under the FTCA; second, under the Rhode Island wrongful death statute (which would control the issues in this case), any beneficiary designated by that statute has full legal authority to file, pursue, and settle a wrongful death claim. As such, the plaintiff, the decedent's wife and sole beneficiary to any wrongful death claim, had full legal authority to file administrative claims based on his death.

### A. Federal Case Law

■ According to federal case law, the plaintiff, regardless of her status as an administratrix or voluntary administratrix, had full authority to file administrative claims for her husband's death. In *Wozniak v. United States,* 701 F.Supp. 259 (D.Mass.1988), the district court held that the FTCA and the regulations promulgated in 28 C.F.R. §§ 14.1–14.11 permit the filing of administrative claims by individuals who are beneficiaries under the Massachusetts wrongful death statute, even though under Massachusetts law any lawsuit instituted on those claims would have to be brought by a duly appointed administratrix. *See id,* at 260–61; *Van Fossen v.*

*United States*, 430 F.Supp. 1017, 1021 (N.D.Cal.1977) (holding that "any person who is intended to be the legal beneficiary of a wrongful death action under the substantive law of the place of the accident, is entitled to file an administrative claim"); *Del Valle Rivera v. United States*, 626 F.Supp. 347, 349–50 (D.P.R.1986) (following *Van Fossen* ). This result is in accord with the Congressional intent behind the FTCA's administrative claims process, which is meant to benefit claimants and is not intended to preclude claimants from having their day in court. *See Wozniak*, 701 F.Supp. at 261. Therefore, if the plaintiff is a statutory beneficiary under the applicable state's wrongful death statute, then she had full legal authority to file the administrative claims in question.

█ The plaintiff is the sole and exclusive beneficiary of a wrongful death claim based on the decedent's death regardless of whether the Rhode Island[3] or the Massachusetts[4] wrongful death statute were applied to this case. Under both states' statutes, the money recovered from a wrongful death claim is *not* an asset of the decedent's probate estate. Rather, such money is held solely for the benefit of the beneficiaries under the wrongful death statute itself. *See* Mass.Gen.L. ch. 229, §§ 1, 2; R.I.Gen.L. § 10–7–2. *See also Marco v. Green*, 415 Mass. 732, 739, 615 N.E.2d 928 (1993) ("The money recovered

3. R.I.Gen.L. §§ 10–7–1 – 10–7–14 ("Death By Wrongful Act") (1998).

4. Mass.Gen.L. ch. 229, §§ 1–11 ("Actions for Death and Injuries resulting in Death") (2000).

5. The principle enunciated in *Wozniak*, on which this Court relies, has not been overruled by either *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), or *Marco v. Green*, 415 Mass. 732, 615 N.E.2d 928 (1993). *McNeil*'s holding, that a claimant under the FTCA must first exhaust his administrative remedies before ever stepping into court, *see McNeil*, 508 U.S. at 112, 113 S.Ct. at 1983–84, does not affect the principle enunciated in *Wozniak* —namely, that the plaintiff as a beneficiary under the applicable state's wrongful death statute was competent to file an administrative claim for

upon a wrongful death claim is not a general asset of the probate estate, but constitutes a statutory trust fund, held by the administratrix as trustee for distribution to the statutory beneficiaries.") (*quoting, Sullivan v. Goulette*, 344 Mass. 307, 311, 182 N.E.2d 519 (1962)); *Walsh v. Bressette*, 51 R.I. 354, 155 A. 1, 3 (1931) ("The amount recovered [in an action for wrongful death] is not administered as an asset of the deceased's estate, but is directly distributed to those designated [as beneficiaries] by the [wrongful death] statute"). Since the decedent left no children and the plaintiff was the decedent's wife at the time of his death, the plaintiff is the sole beneficiary of these wrongful death claims under both Rhode Island and Massachusetts law. *See* R.I.Gen.L. § 10–7–2; Mass. Gen.L. ch. 229, § 1(1). Thus, the plaintiff had full legal authority to file these administrative claims for the decedent's wrongful death.[5]

### B. *The Rhode Island Wrongful Death Statute, R.I.Gen.L. §§ 10–7–1 – 10–7–14*

█ Furthermore, as the sole beneficiary, the plaintiff had the legal authority under the Rhode Island wrongful death statute to file her administrative claims, as well as any lawsuit, based on the decedent's death. *See* R.I.Gen.L. § 10–7–3;

wrongful death from the moment of the decedent's death. Similarly, the Massachusetts Supreme Judicial Court's holding in *Marco* does not call into question the holding relied upon in *Wozniak*. *Marco* holds that an individual acting in the capacity as a voluntary administratrix pursuant to Section 16 cannot settle a wrongful death claim on behalf of all beneficiaries. *See Marco*, 415 Mass. at 739, 615 N.E.2d 928. However, *Marco* does not hold that a beneficiary cannot settle a wrongful death claim on behalf of herself with respect to her own individual interest in such a claim. *See id.* at 739 n. 10, 615 N.E.2d 928. This Court cannot find any language in the Massachusetts wrongful death statute, or any other reason, prohibiting a beneficiary from doing so, especially a sole beneficiary.

*Carpenter v. Rhode Island Co.*, 36 R.I. 395, 90 A. 768, 770–71 (1914) (a beneficiary may bring a wrongful death action under two circumstances: (1) when no administrator has been appointed; or (2) when an administrator has been appointed and that administrator fails to bring a cause of action within six months of death). The defendant, however, argues that the Massachusetts wrongful death statute, which permits only a duly appointed administratrix to bring a suit for wrongful death, *see* Mass.Gen.L. ch. 229, § 2, should control the question of the plaintiff's authority to file her administrative claims because Massachusetts is the venue of the plaintiff's residence and the decedent's estate. It is clear, however, that under Rhode Island's conflict of law principles the Rhode Island wrongful death statute should govern the question of the plaintiff's authority to file her administrative claims because Rhode Island's contacts with the parties and occurrences underlying this cause of action are more numerous and more significant than those of Massachusetts.

 In deciding which state's law should control this issue, the Court looks to conflict of law principles of Rhode Island as the state in which the allegedly wrongful acts occurred. *See* 28 U.S.C. § 1346(b). *See also Richards v. United States*, 369 U.S. 1, 11–13, 82 S.Ct. 585, 592–593, 7 L.Ed.2d 492 (1962) (under Section 1346(b) the "whole" law of the state should be applied, including its conflict laws). Rhode Island has abandoned the traditional *lex loci delicti* conflict of law doctrine which invariably dictated the application of the law of the state wherein the injury occurred to determine the rights and liabilities of the parties. *See Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917, 923 (1968). Rhode Island now follows the more flexible "interest-weighing" approach which is also referred to as a rule of "choice-influencing considerations." *See id.; Cribb v. Augustyn*, 696 A.2d 285, 288 (R.I.1997).

In applying the "interest-weighing" approach, which is modeled after the Restatement (Second) of Conflicts § 145(2), a Rhode Island court considers the particular facts of a case and determines therefrom the rights and liabilities of the parties "in accordance with the law of the state that bears the most significant relationship to the event and the parties." *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I.1986) (citing *Busby v. Perini Corp.*, 110 R.I. 49, 290 A.2d 210 (1972)). Nonetheless, absent highly unusual circumstances, the "interest-weighing" approach and the *lex loci delicti* approach will generally result in the same conclusion. *See Blais v. Aetna Casualty & Surety Co.*, 526 A.2d 854, 856–57 (R.I.1987); *Farrell v. Cohen, et al.*, 1994 WL 930979, *3, 1994 R.I. Super. 653 (R.I.Super.1994).

 Under the "interest-weighing" approach, a Rhode Island court first determines which states have relevant contacts with the parties and occurrences underlying the action by considering the following particular factors pertaining in each case setting:

(a) the place of the injury;

(b) the place of the conduct causing the injury;

(c) the domicile, residence, etc., of the parties; and

(d) the place where the relationship between the parties is centered.

*See Cribb*, 696 A.2d at 288; *Pinkham v. Collyer Insulated Wire Co.*, 1994 WL 385375, *8–9 (D.R.I.1994). In the instant case, only Rhode Island and Massachusetts have any contacts with the parties and occurrences underlying this action. If a conflict exists between the laws of states having such contacts with the parties and occurrences underlying the action, then the following guidelines are to be considered, along with the contacts listed above, in determining which state has the more significant interest in having its law applied:

(1) predictability of results;

(2) maintenance of interstate order;

(3) simplification of the judicial task;

(4) advancement of the forum's governmental interest; and

(5) application of the better rule of law.

See *Cribb* 696 A.2d at 288, *Pinkham,* at *8–9.

Examining the "interest-weighing" approach's first set of factors (the contacts), it is clear that Rhode Island has significantly more contacts to the parties and occurrences underlying this action than does Massachusetts. Both the allegedly tortious conduct and resulting injury took place at the Defendant's VA hospital located in Providence, Rhode Island. Furthermore, the relationship between the parties originated, and was centered exclusively, within Rhode Island. Only factor (c) points towards Massachusetts which is where the plaintiff resides. However, factor (c) also points towards Rhode Island which is the location of the defendant's hospital, as well as the residency of Dr. Thomas Rocco who was an original defendant in this action.[6] Rhode Island clearly has more contacts with the parties and occurrences underlying this action.

■ Examining the second set of factors, it is equally clear that Rhode Island has a more significant interest in having its laws applied to this case than does Massachusetts. Applying Rhode Island law to this case, with respect to the issue as to who may bring a wrongful death suit, would foster the predictability of results. The predictability of results factor requires the Court to consider whether at the time the allegedly tortious conduct oc-

curred the defendant had a reasonable expectation that a cause of action arising from it would be governed by Rhode Island law. See *Pardey,* 518 A.2d at 1352; *Turcotte v. Ford Motor Co.,* 494 F.2d 173, 178 n. 6 (1st Cir.1974). When, as here, a wrongful death action arises from a relationship that is centered exclusively in Rhode Island and in which the allegedly tortious conduct and resulting death also occurred in Rhode Island, an alleged tortfeasor, like the defendant, would naturally expect that the Rhode Island wrongful death statute would govern that cause of action.

■ Similarly, the application of Rhode Island law to this action would not adversely affect the maintenance of interstate order or the advancement of the forum state's governmental interests.[7] In considering these factors, "Rhode Island courts inquire whether another state's law and policy would be 'offended' by application of Rhode Island law." *Turcotte,* 494 F.2d at 178 (*citing Brown v. Church of Holy Name of Jesus,* 105 R.I. 322, 252 A.2d 176, 180 (1969)). The Massachusetts requirement, that an action for wrongful death be brought only by an administratrix who holds any proceeds recovered by a wrongful death claim in trust for the statutory beneficiaries, is seemingly intended to provide an orderly process for adjudicating wrongful death claims, as well as to guarantee that the statutory beneficiaries receive their fair share of the proceeds from such claims. See *Marco* 415 Mass. at 738, 615 N.E.2d 928. The application of Rhode Island law would not offend these pur-

---

**6.** As already explained, the location of the decedent's estate is completely irrelevant to the conflict of law analysis because the decedent's estate is not a beneficiary under either state's wrongful death statute. See *supra; Marco,* 415 Mass. at 739, 615 N.E.2d 928; *Walsh,* 155 A. at 3.

**7.** The plaintiff filed her administrative claims with the VA Regional Counsel's Office located in Providence, Rhode Island. The plaintiff represented at oral argument that the choice to file this action in the District of Massachu-

setts, as opposed to the District of Rhode Island, was motivated in large part by the understanding that if the case were filed in the District of Rhode Island, it would have placed the United States Attorney's Office for the District of Rhode Island in a conflict of interest due to the criminal investigation being conducted by that office of the underlying facts of this case, especially of the alleged criminal conduct of Dr. Thomas Rocco, the agent of the Defendant United States.

poses—particularly given the facts of this case. The Rhode Island statute permits only one action, whether it is brought by an administratrix or a beneficiary. *See* R.I.Gen.L. § 10–7–3; *Carpenter,* 90 A. at 771. When only some of the beneficiaries bring a wrongful death claim pursuant to Section 10–7–3, they must sue on behalf of all the beneficiaries and they owe a fiduciary duty to these non-party beneficiaries. *See Walsh,* 155 at 2–3. Similar to the Massachusetts statute, this fiduciary obligation provides sufficient safeguards to protect the interests of all the statutory beneficiaries. Furthermore, since the plaintiff in this case is the *only* possible beneficiary of a wrongful death claim based on the decedent's death, there is no substance to the defendant's argument that it would have been acting at its own peril in settling the plaintiff's claims, as defendant would not have placed itself at risk of multiple lawsuits from other beneficiaries. *See Carpenter,* 90 A. at 772.

The simplification of the judicial task factor has no bearing on this case because there is no difficulty for the Court to apply the clear statutory language of either state's statute.

The final factor, the better rule of law factor, is in practice a pliable concept which courts have used as the ultimate justification for their decision to apply one state's law as opposed to another state's law. The Court, as a federal district court, is reluctant to pronounce one state's law as being better than another state's law. However, the Rhode Island Supreme Court has noted that the addition of a provision such as Section 10–7–3 to a wrongful death statute was a "necessity"

to ensure that the beneficiaries would not be deprived of their rights under a wrongful death statute due to the lack of, or neglect of, an administratrix. *See Carpenter,* 90 A. at 770. As such, a Rhode Island court would consider the Rhode Island wrongful death statute, and in particular Section 10–7–3, the better rule of law as compared to the Massachusetts wrongful death statute which does not allow a beneficiary to pursue a wrongful death suit in any situation.

In sum, regardless of her status as administratrix, the plaintiff, as the sole beneficiary of these wrongful death claims, had full legal authority to file her administrative claims under both federal case law and the Rhode Island wrongful death statute.[8] Who is more qualified to file administrative claims to protect the interests of the beneficiaries than the sole beneficiary herself, the plaintiff herein, who is the decedent's wife, the then *de facto* administratrix and at present the *de jure* administratrix of said estate? No one.

## II. *Exhaustion of Administrative Remedies*

The defendant's second contention, that this Court lacks jurisdiction because the plaintiff failed to provide it with sufficient information necessary to investigate her claims, is also without merit. The defendant argues that the plaintiff did not exhaust her administrative remedies because she failed to respond to the defendant's reasonable requests for additional information to substantiate her claims as required by 38 C.F.R. §§ 14.600–14.608 and 28 C.F.R. §§ 14.1–14.11.[9] Specifically, the de-

---

**8.** The defendant argues that even if Section 10–7–3 applies to this case, the plaintiff still failed to file a proper administrative claim because the plaintiff neglected: (1) "to bring the action on behalf of all the beneficiaries" and (2) "to affirmatively plead the status of the administrator or executor." As already noted numerous times, the plaintiff is the sole and only possible beneficiary of the decedent under the wrongful death statute. Therefore, by pursuing this claim on her own behalf, the

plaintiff has brought the action on behalf of all the beneficiaries, namely herself. As to the defendant's second argument, this Court can find no language in Section 10–7–3 which would require the plaintiff to plead the status of an administrator.

**9.** These two sets of regulations are promulgated pursuant to 28 U.S.C. § 2672 which grants federal agencies the authority to settle claims against the United States and to define the

fendant asserts that it requested evidence of her authority to pursue her claims and evidence in the form of a medical expert's report to substantiate her claims. The defendant's argument fails because the requirements of 28 C.F.R. §§ 14.1–14.11 are not related to the jurisdictional notice requirements of Section 2675 and, even if they were, the plaintiff had sufficiently responded to all of the defendant's reasonable requests for additional information.

■ The Court of Appeals for the First Circuit has held that a claimant has satisfied the jurisdictional notice requirements of Section 2675 if she "provides a claim form or 'other written notification' which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." *Santiago–Ramirez*, 984 F.2d at 19 (citations omitted); *Vega v. U.S.*, 68 F.Supp.2d 113, 117 (D.P.R.1999). While the statutory notice requirements of Section 2675 coincide with the presentment requirements in 28 C.F.R. § 14.2(a), the Court of Appeals for the First Circuit has followed the general shift among all circuits in acknowledging that the additional information requested by 28 C.F.R. §§ 14.1–14.11 is not relevant for the jurisdictional notice requirements of Section 2675. *See Santiago–Ramirez*, 984 F.2d at 19 (*citing Lopez v. United States*, 758 F.2d 806 (1st Cir. 1985); *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C.Cir.1987); *Johnson v. United States*, 788 F.2d 845, 848 (2nd Cir. 1986), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986); *Tucker v. United States Postal Serv.*, 676 F.2d 954, 959 (3rd Cir.1982); *Adams v. United States*, 615 F.2d 284, 288–89 (5th Cir.1980); *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir.1981); *Charlton v. United States*, 743 F.2d 557, 561 (7th Cir.1984); *Farmers State Sav. Bank v. Farmers Home Admin.*, 866 F.2d 276 (8th Cir.1989); *Warren v. United States Dep't of Interior Bureau of Land Management*, 724 F.2d 776, 780 (9th Cir.1984); *Bush v. United States*, 703 F.2d 491, 494 (11th Cir.1983)).

The plaintiff has clearly satisfied the jurisdictional notice requirements of Section 2675. Within two years from decedent's death, the plaintiff filed two separate Standard Form 95s in which separate claims for wrongful death and for loss of consortium were made. On both SF 95s, the plaintiff clearly stated the nature of the claims, the date on which the allegedly tortious conduct occurred, and a sum certain sought in damages for each claim. This information was sufficient to put the defendant on notice of the claims, to allow the defendant to conduct a full investigation of the claims, and to apprize the defendant of the extent of its potential liability.

Indeed, the facts of this case clearly indicate that the defendant was well aware of the incident underlying the plaintiff's claims. As a result of the incident, the defendant, through the Federal Bureau of Investigation and a grand jury convened by the United States Attorney's Office for the District of Rhode Island, conducted a full investigation into the matter, leading the defendant to refuse to certify Dr. Rocco, under the Westfall Act, 28 U.S.C. § 2679, as acting within the scope of his authority when he administered the lethal dose of morphine sulphate. It seems inconceivable for the defendant to assert that it had insufficient information to conduct a full investigation into the plaintiff's claims when it apparently had sufficient information to decide that it would not defend Dr. Rocco, its agent, in any suit that might arise from such claims. As such, the plaintiff has satisfied the jurisdictional notice requirement of Section 2675 when she filed the two SF 95s on September 15, 1998.

■ The plaintiff complied with all of the defendant's reasonable requests for in-

settlement process. The regulations of 38 C.F.R. §§ 14.600–14.608, which are promulgated by the Veterans Affairs Administration, incorporate by reference the regulations promulgated by the Attorney General in 28 C.F.R. §§ 14.1–14.11.

formation necessary for an investigation of her claims. Unlike *Swift v. United States*, 614 F.2d 812 (1st Cir.1980) or *Coska v. United States*, 114 F.3d 319 (1st Cir.1997), this is not a case in which neglect or intentional lack of cooperation on the part of a plaintiff prevented the agency from acting on the claims. The evidence indicates that plaintiff's counsel did respond to the defendant's requests as to the plaintiff's authority and it was only after the statute of limitations had run that the defendant apparently became dissatisfied with counsel's response. In response to the defendant's initial request for information as to the plaintiff's authority, the plaintiff's counsel forwarded, among other things, a copy of the decedent's death certificate, a copy of the voluntary administration form, and evidence that plaintiff was the wife of the decedent. These documents, by themselves, were sufficient to establish the plaintiff's authority to pursue her claims. The voluntary administration form indicated that the decedent was survived only by his wife, the plaintiff, and his sister who lived in Iowa. Since the form indicated that the decedent left no children or issue, the defendant was put on notice that the plaintiff was the only possible beneficiary under both the Rhode Island and the Massachusetts wrongful death statutes. *See* R.I.Gen.L. § 10–7–2; Mass. Gen.L. ch. 229, §§ 1, 2. This same information made it patently clear to the defendant that the plaintiff was the presumptive administratrix of the decedent's estate, *see* Mass.Gen.L. ch. 193, § 1, and that the decedent's sister could not have been appointed the administratrix without the consent of the plaintiff. *See* Mass.Gen.L. ch. 193, § 2. Based on this information, the defendant should have expected that the plaintiff would have been the party-plaintiff, whether as an administratrix or beneficiary, in any suit arising from the allegedly tortious conduct and that, as sole

beneficiary, any settlement of the claim would be for the plaintiff's exclusive benefit.

Furthermore, the evidence indicates that the defendant led the plaintiff to believe that the defendant was satisfied with the plaintiff's responses. The defendant contends that, unsatisfied with the plaintiff's response to its initial request, it sent an additional request to the plaintiff on October 7, 1998 and that the plaintiff never responded to this additional request. However, in his affidavit, plaintiff's counsel testifies that on October 9, 1998, he responded to this request by calling Murray Zaretsky, the Assistant Regional Counsel for the Northeast Region of the Department of Veterans' Affairs. *See* Affidavit, Brian R. Cuhna, ¶ 5. Plaintiff's counsel testifies that Mr. Zaretsky informed him that the defendant was merely seeking evidence of counsel's authority to represent the plaintiff. *See* id. at ¶ 6. Zaretsky's affidavit, which was also filed with the Court, admits that a telephone call took place on October 9, 1998 and does not deny plaintiff's allegations as to what was discussed during that phone conversation.[10] *See* Affidavit, Murray Zaretsky. ¶ 3.

 The defendant also contends that the plaintiff's failure to respond to its request for a report of a medical expert completely thwarted any possibility of settling the plaintiff's claims. However, a claimant is required neither to conduct the investigation for the defendant nor to substantiate her claim to the complete satisfaction of the defendant. A claimant is merely required "to furnish notice to the government sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all." *Lopez*, 758 F.2d at 809–10; *see Santiago–Ramirez*, 984 F.2d at 19. Furthermore, "[s]ection 2675(a) was not intended to allow an agency to insist on

---

**10.** Zaretsky's affidavit also admits that, subsequent to this phone conversation, numerous other telephone conversations occurred up until March 19, 1999. Zaretsky's affidavit does not contend that the issue of the plaintiff's authority to file administrative claims was ever raised in any of these phone conversations.

proof of a claim to its satisfaction before the claimant becomes entitled to a day in court." *Avery v. United States,* 680 F.2d 608, 611 (9th Cir.1982). If a claimant were pursuing a claim based on a liability theory which finds little, or no, support in the underlying facts, it might be appropriate for a claimant to provide the defendant with an expert's opinion in order for the defendant to evaluate the claimant's questionable theory of liability. Here, however, the plaintiff's claims do not involve a novel or unusual theory of liability which has no foundation in the facts. As such, the plaintiff responded to all of the defendant's reasonable requests and provided the defendant with all information necessary for the defendant to conduct a full investigation into the allegedly tortious incident and the facts indicate that the defendant did just that.

## CONCLUSION

The defendant's motion is denied because the plaintiff has satisfied the jurisdictional notice requirements of 28 U.S.C. § 2675. On September 15, 1998, the plaintiff filed two written administrative claims based on her husband's death. At the time she filed her administrative claims, the plaintiff, as the decedent's wife and sole beneficiary of these claims, had the full legal authority to do so. These administrative claims made a demand for a sum certain and were of sufficient detail to allow the defendant to conduct a full investigation into the underlying circumstances of the claims—which the defendant did in fact do. The plaintiff filed this cause of action only after the defendant had failed to make a final disposition of her administrative claims within six months of their filing. As such, the Court has jurisdiction over the plaintiff's claims. This decision causes no prejudice to the defendant, for the defendant had notice of the plaintiff's claims within the two-year statute of limitations period and ample opportunity to settle the matter with the plaintiff. Defendant's Motion for Summary Judgment is denied.

**SO ORDERED.**