**Angelo LOPEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.2003–10916–RBC.[1]**

United States District Court, D. Massachusetts.

Dec. 20, 2004.

---

**1.** On February 19, 2004, this case was reassigned to the undersigned United States Magistrate Judge with the parties' consent pursuant to Title 28, U.S.C. § 636(c).

Joseph T. Desmond, Law Office of Dane Shulman, North Quincy, MA, for Angelo Lopez, Plaintiff.

Eugenia M. Carris, United States Attorney's Office, Boston, MA, for USA, United States Marshals Service, Defendants.

## *MEMORANDUM AND ORDER ON THE GOVERNMENT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(# 4)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

The Plaintiff, Angelo Lopez ("Lopez"), brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, against the United States Marshals Service ("USMS") and the United States, ("the Government"),[2] alleging that he received negligent medical treatment while an inmate in federal custody. Complaint, # 1. The Government has moved to dismiss this action under Fed. R.Civ.P. 12(b)(1) contending that this Court lacks subject matter jurisdiction because Lopez failed to present his claim to the appropriate federal agency within the required two-year statute of limitations. Memorandum in Support of the Government's Motion to Dismiss, # 5. Alternatively, the Government argues that Lopez' action must be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) because Lopez' complaint alleges negligence at the hands of independent contractors, for which the United States is not liable.[3] Lopez has filed an opposition to the motion to dismiss, # 8. The motion was argued at a hearing before the Court on March 23, 2004. For the reasons discussed below, the Government's Motion to Dismiss is allowed in part and denied in part. The Court will permit limited discovery on certain jurisdictional questions as set forth below.

### II. Factual Background

On September 7, 1998, Lopez injured his left ankle while playing basketball. # 1 ¶ 4.

---

**2.** The plaintiff brought the case against the "United States Marshals Service" and the "United States." The Government correctly notes that Lopez' suit is properly against the United States alone pursuant to 28 U.S.C. § 2679, and, therefore, the Court directs the Clerk to terminate the United States Marshals Service as a defendant.

**3.** The Government has framed its motion to dismiss based on the "independent contractor" exception as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The waiver of sovereign immunity under the FTCA is subject to a number of exceptions, and "[w]hen these exceptions to the Claims Act apply, a court lacks subject matter jurisdiction to hear the plaintiff's claims against the United States." *Heinrich v. Sweet (Heinrich II)*, 62 F.Supp.2d 282, 321 (D.Mass.1999) (and cases cited.) *Accord United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (stating that "the terms of the [United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations omitted), *quoted in Heinrich v. Sweet (Heinrich I)*, 44 Supp.2d 408, 414 (D.Mass.1999). The Court will view the Government's argument on this point under the jurisdictional standard of Fed.R.Civ.P. 12(b)(1).

At the time, he was an inmate under federal custody at Lake County Jail in Painsville, Ohio. *Id.* According to the complaint, Lopez was initially treated for the injury two weeks later, # 1 ¶ 6, when he was taken to Lake East Hospital in Painsville, Ohio. There, his ankle was x-rayed and diagnosed to be broken. # 1 ¶¶ 6–7. Lopez was released from the hospital with no treatment for the break, and was returned to jail without crutches, cast or a brace. # 1 ¶ 8. Two weeks later, Lopez was again taken to Lake East Hospital, where another x-ray confirmed the break. # 1 ¶ 9. This time, he was fitted with a plastic brace and given painkillers. *Id.* Three weeks later, sometime in November, 1998, the cast was removed, # 1 ¶ 10, and Lopez continued on a regimen of physical therapy and pain medication. # 1 ¶ 11. By August, 1999, he had been moved to another facility, the Mahoney County Jail in Youngstown, Ohio. # 1 ¶ 12. There, he was told that his foot was not, in fact, broken. *Id.* By November, 1999, he had been transferred to LSCI Allenwood, where Lopez was told that he would need surgery because "the ankle appeared to be a clubfoot deformity with some degree of equinus, hindfoot and midfoot varus, and inversion deformity." # 1 ¶ 13. Lopez requested surgery, but no surgery was performed. # 1 ¶¶ 14–15. At some point following this diagnosis, Lopez requested his medical records and retained an attorney.[4] Documents Submitted by Government on March 24, 2004, # 19. That attorney (the first of two), in a letter dated April 26, 2000, advised USMS in Cleveland, Ohio that he intended to represent Lopez in a negligence action. Letter from Jaime P. Serrat, # 19. Later, Lopez was moved again to FMC Devens. # 1 ¶ 15. There, in October 2000, he was again told that he would require surgery to correct the deformity in his ankle. # 1 ¶ 16. In January and April, 2001, Lopez was again advised that he required surgery, and that his concerns would be addressed "in the near future." # 1 ¶¶ 17–18. Surgery was performed in July 2002. # 1 ¶ 19. The surgery was ineffective and Lopez' condition—an ankle that is "inverted, seriously deformed, and cannot support his weight" persists to this day. # 1 ¶¶ 20–21.

The Plaintiff filed an administrative claim with USMS on June 19, 2002, pursuant to the provisions of the FTCA, 28 U.S.C. 2675 *et seq.*, claiming negligence on the part of the United States. # 1 ¶¶ 2–3. That claim had been pending for more than six months when the Plaintiff filed the complaint in this suit on May 15, 2003 in accordance with 28 U.S.C. § 2401. # 1 ¶ 2. That administrative claim forms the basis for the current suit. The Court held a hearing on the matter on March 23, 2004. At the hearing, and through the parties' briefs, the Court learned that Lopez had filed an earlier administrative claim, in October 2000, also complaining of the injury that is the basis of this suit. Lopez argues in his brief that this earlier administrative claim is also viable, and the Government has argued that the October 2000 claim, though timely, fails as insufficient. For the reasons set forth below, the Court will allow in part and otherwise deny claims deriving from the June 2002 administrative claim. The Court will permit Lopez to conduct limited discovery into the jurisdictional sufficiency of the October 2000 administrative claim and will grant

4. *The Court gleans this fact and other facts* not stated in the complaint from documents that the Government submitted following the March 23, 2004 hearing on this matter. The documents submitted at the hearing have not been authenticated, and the Plaintiff had not examined the documents by the time of the hearing. If the Plaintiff objects to the authenticity of the documents, he may file his objection, stating his reasons for his objection, within ten days of the date of this Memorandum and Order.

Lopez leave to amend his complaint provided that he adequately alleges subject matter jurisdiction as set forth more fully below.

### III. The Jurisdictional Standard

"It is well settled in this circuit that the timely filing of an administrative claim pursuant to 28 U.S.C. § 2401(b) is a jurisdictional prerequisite to filing suit under the FTCA," *Skwira v. United States,* 344 F.3d 64, 71 (1st Cir.2003) (citations omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 2836, 159 L.Ed.2d 267 (2004), and a failure to comply with the requirement "means that the district court lacks subject matter jurisdiction to entertain the suit and must dismiss it." *Id.* (citation omitted). In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996). However, "[i]n a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary factfinding." *Skwira,* 344 F.3d at 71–72. In that case, a district court, without conversion to a motion for summary judgment, "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." *Dynamic Image Technologies, Inc. v. United States,* 221 F.3d 34, 37 (1st Cir.2000) (citation omitted). *See also Skwira,* 344 F.3d at 71–72 (noting that district court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.") (quoting *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001)). Accordingly, in order to establish

its authority to hear case, "a district court may (1) consider evidence submitted by the parties, such as depositions and exhibits; (2) entertain arguments not raised by the parties' memoranda; and (3) resolve factual disputes, if necessary." *Heinrich I,* 44 F.Supp.2d at 415.

### IV. Analysis

 The FTCA, 28 U.S.C. §§ 1346, 2671–2680, waives the sovereign immunity of the United States and permits tort actions in federal court, provided that a tort claimant exhaust administrative remedies before filing suit in federal court. *See Coska v. United States,* 114 F.3d 319, 323 n. 8 (1st Cir.1997) (and cases cited). Failing to file an administrative claim with the appropriate federal agency within two years of a claim's accrual results in that claim being " 'forever barred.' " 28 U.S.C. § 2401(b); *see Skwira,* 344 F.3d at 71. The FTCA further requires that the administrative claimant "first present[ ] the claim to the appropriate Federal agency . . . ." 28 U.S.C. § 2675(a). A tort claim is deemed "presented" to a federal agency when a claimant gives notice to the Government of the nature of the claim and the damages requested. *Santiago–Ramirez v. Sec. of Dept. of Defense,* 984 F.2d 16, 19 (1st Cir.1993). A potential plaintiff has satisfied this notice requirement "if he or she provides a claim form [an executed Standard Form 95] or 'other written notification' which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." *Santiago–Ramirez,* 984 F.2d at 19 (and cases cited). The First Circuit "approaches the notice requirement leniently, 'recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims.' " *Id.* (quoting *Lopez*

*v. United States,* 758 F.2d 806, 809–10 (1st Cir.1985)).

As noted, in this case Lopez has submitted his administrative claim twice: once, in October 2000, and once again in June 2002. Though Lopez has pled only the June 2002 claim as the jurisdictional basis for this suit, both parties have directed the Court's attention to the October 2000 claim, in briefing and in oral argument. The Government argues that both presentments fail, for different reasons, to satisfy the FTCA's jurisdictional requirements. The Court considers the Government's arguments and the sufficiency of each claim *seriatim* below.

A. *The June 2002 Administrative Claim*

The Government argues that this Court lacks subject matter jurisdiction because Lopez filed the June 2002 administrative claim late. The complaint states that Lopez filed his administrative claim with USMS on or about June 19, 2002, # 1 ¶ 2, and Lopez has attached a copy of that claim to his complaint. The Government argues that Lopez' claim accrued at the latest by November 19, 1999, # 5 at 5, when Lopez was first diagnosed with the deformity in his foot and that, therefore, Lopez was required to file his action with the appropriate federal agency by November, 2001. Lopez argues that the earliest he could have discovered the injury of which he complains was in July 2002, when he realized that the surgery which promised to correct his condition was unsuccessful.

■ A claim accrues under the FTCA when the plaintiff knows both the existence and cause of his injury, and not at a later time when he also knows that the acts inflicting the injury constitute medical malpractice. *United States v. Kubrick,* 444 U.S. 111, 122–124, 100 S.Ct. 352, 359–361, 62 L.Ed.2d 259 (1979). Thus, a " 'plaintiff need not know each and every

relevant fact of his injury or even that the injury implicates a cognizable claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.' " *Cutting v. United States,* 204 F.Supp.2d 216, 225 (D.Mass.2002) (quoting *Kronisch v. United States,* 150 F.3d 112, 121 (2d Cir.1998)), *aff'd, Skwira v. United States,* 344 F.3d 64 (1st Cir.2003).

■ In this case, the facts establish not only that Lopez knew both the existence and cause of the injury, but also that, by late April 2000, he knew that the injury implicated a cognizable claim of negligence. Lopez was diagnosed with the deformity in his foot in November, 1999. Following that diagnosis, Lopez requested his medical records in December 1999, # 19, and sought advice from an attorney. By letter dated April 26, 2000, Lopez' attorney advised USMS that he intended to represent Lopez "with respect to injuries he sustained as a result of your negligence." Letter from Jaime P. Serrat, # 19. On these facts, the Court determines that the claim here had accrued at least by November, 1999, when, according to the complaint, Lopez was first diagnosed with the deformity in his ankle and told that surgery would be required to correct it. *See Nicolazzo v. United States,* 786 F.2d 454, 457 (1st Cir.1986) (holding that statute of limitations is triggered upon receiving correct diagnosis). At the latest, the claim accrued by April 26, 2000, the date by which Lopez had requested his medical records and retained an attorney. *See e.g., Gonzalez v. United States,* 284 F.3d 281, 290 (1st Cir.2002) (noting that claim had accrued by the time plaintiff had hired attorney) (and cases cited). *See also Gonzalez–Bernal v. United States,* 907 F.2d 246, 249–250 (1st Cir.1990) (noting that filing of first administrative claim es-

tablishes claimant's knowledge for statute of limitations purposes). Under either reckoning, the claim is time-barred, and the Court lacks subject matter jurisdiction based on the presentment dated June 19, 2002, at least as to the damage caused to Lopez' foot by November, 1999, when the specific deformity was diagnosed.[5]

■ Lopez argues that his claim is not time-barred under the continuing treatment doctrine. The Court rejects this argument. Under the continuing treatment doctrine as it has been applied in a few circuits, the statute of limitations is tolled as long as the plaintiff is under the continuous treatment of the negligent actor. *See e.g., Wehrman v. United States*, 830 F.2d 1480 (8th Cir.1987); *Otto v. Nat'l Institute of Health*, 815 F.2d 985 (4th Cir.1987). The doctrine permits a patient to repose trust in the treating doctor, and excuses a patient from challenging the quality of care by filing suit until the doctor-patient relationship has ended. *See, e.g., Otto*, 815 F.2d at 988. Here, however, Lopez undoubtedly knew of the cause of his injury because the record establishes that he retained a lawyer in April 2000, and later, in October 2000, filed an administrative claim. Thus, any effort to rely on the continuous nature of the doctor-patient relationship here was interrupted when Lopez' attorney began to press Lopez' negligence claim. *Accord Holland v. United States*, 302 F.Supp.2d 484, 488 (M.D.N.C.2004). *Cf. Dziura v. United States*, 168 F.3d 581, 583 (1st Cir.1999) (noting that "continuing violation" doctrine "is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it.") (cita-

tions omitted). Nothing apparently impeded Lopez from pursuing his first administrative claim (other than perhaps its legal insufficiency, discussed below.)

■ The Court notes, however, that Lopez may have plausibly pled a distinct cause of action for mistreatment following his diagnosis by the Government, and for any complications that he may have sustained as a result of the Government's failure to treat the original damage to the foot properly. *See e.g., Wehrman*, 830 F.2d at 1486 n. 4. Lopez was initially diagnosed with the clubfoot deformity in November, 1999 while an inmate at a federal correctional facility, and advised that he needed surgery. The allegations of the complaint, read liberally, establish that Lopez repeatedly requested surgery, was repeatedly advised that surgery would be required and was repeatedly assured that surgery was forthcoming. Furthermore, the diagnosis dated November 19, 1999, indicates that "Mr. Lopez may need significant attention paid to this foot to get it to be a flat foot." Medical notes by John T. Magill, M.D., dated Nov. 17, 1999, # 19. At this stage of the proceedings, Lopez should be afforded the opportunity to pursue a claim of negligence based on the Government's alleged inaction following its diagnosis. Thus, for acts or omissions falling within the two-year statute of limitations-June 19, 2000 and thereafter-the Court has subject matter jurisdiction. That cause of action, however, is limited to acts or omissions committed at FMC Devens because Lopez' administrative claim refers only to "mistreatment" by the medical staff at the county jail in Ohio and by the medical staff at FMC Devens. *See Dynamic Image Technologies, Inc.*, 221

---

**5.** Because of the Court's ruling on the statute of limitations argument, the Court need not reach the alternative argument that Lopez' injury was caused by independent contractors and not by the federal government. The Court takes up that argument below, however, in its discussion of the viability of the October 2000 claim.

F.3d at 40 (noting that complaint may not exceed scope of administrative claim) (citations omitted). In order to prevail on such a claim, Lopez would, of course, have to establish that the failure in treatment following the diagnosis was negligent, and that the mistreatment either led to the permanent condition, or "at least that it aggravated [his] condition to an extent that can reasonably be quantified in an award of damages." *Goodhand v. United States,* 40 F.3d 209, 215 (7th Cir.1994).

Finally, the Court addresses a matter first raised at the hearing on the matter, *viz.,* the sufficiency of the June 2002 administrative claim to put the Government on notice about a claim for mistreatment following diagnosis. The administrative claim states in its entirety:

> Angelo Lopez, while an [sic] federal inmate at a county jail in Ohio, broke his ankle on 9/7/98. At the time of the injury, Mr. Lopez was assured by the medical staff at that institution, and later at the medical staff at FMC Devens, that the treatment regimen—which included no crutches and a very short term cast-was appropriate. Relying on such advice, and without a choice in the matter, Mr. Lopez has since sustained foot and leg deformity due to the mistreatment. Reconstructive surgery is now required and may indeed prove ineffectual.

Complaint, # 1, Attachment 1.

As noted previously, the First Circuit approaches the notice-of-claim requirement leniently. "The test is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct ..., it fulfills the notice-of-claim requirement." *Dynamic Image Technologies, Inc.,* 221 F.3d at 40 (and cases cited). First Circuit case law "supports saving a claim that is flawed, where the government's investigatory needs are satisfied." *Kokaras v. United States,* 980 F.2d 20, 23 (1st Cir.1992) (citing *Corte–Real v. United States,* 949 F.2d 484, 486 (1st Cir.1991)), *cert. denied,* 510 U.S. 819, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993).

In this case, the gravamen of the administrative claim is the continuing inadequacy of Lopez' medical care. The claim may fairly be read to encompass the Government's continuing failure to treat Lopez' foot properly, particularly in light of the Government's own medical determination in November 1999 that Lopez should "stay on crutches, bearing weight only as tolerated" and that the foot would require "significant attention" and "extensive surgery." Medical notes by John T. Magill, M.D., dated Nov. 17, 1999, # 19. All of this information was readily available to the Government in documents within its control, and the Court concludes that the administrative claim was sufficient to put the Government on notice that its continuing medical treatment was inadequate. Thus, to the extent that Lopez has stated a cause of action for negligence for inadequate medical treatment by medical staff at FMC Devens, his claim may go forward.

### B. *The October 2000 Administrative Claim*

But that is not the end of the matter. As noted above, during the course of briefing and oral argument, the Court learned that Lopez had filed an administrative claim in October 2000. Lopez attached to his Complaint only a copy of the June 2002 presentment, although in his reply brief he also argues for the viability of the October 2000 presentment. # 8 at 6–7. The Government conceded at the hearing on this matter that this earlier claim would not be time barred under the facts of the case. Instead, the Government argues that the

earlier administrative claim is deficient for two reasons: First, it fails to satisfy even the minimal presentment requirements of the FTCA; and second, it encompasses acts or omissions committed by a county jail, an independent contractor with the United States, for whose actions the United States is not liable under the FTCA. Thus, Lopez must overcome two rather steep hurdles if he hopes to revive his case based on the earlier presentment. First, he must establish that the October 2000 administrative claim was sufficient to put the Government on notice of the nature of the claim. Second, he must establish that the county jail in which he was incarcerated at the time of the alleged earlier mistreatment was an agency of the federal government, and not an independent contractor. For the reasons set forth below, the Court will allow limited discovery to answer these and other questions raised by the documents submitted to the Court thus far.

### 1. The Sufficiency of the October 2000 Administrative Claim

As noted above, the First Circuit treats the presentment requirement leniently: a plaintiff has "satisfied the notice requirement of section 2675 if he or she provides a claim form or 'other written notification' which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." *Santiago–Ramirez,* 984 F.2d at 19 (citing *Lopez v. United States,* 758 F.2d 806 (1st Cir.1985)). "In the context of section 2675, the emphasis is on the agency's receipt of information: it must have enough information that it may reasonably begin an investigation of the claim." *Id.* The Court's inquiry, then, must focus on the "information available to the agency, and not the form in which it was presented . . . ." *Id.* at 19 n. 2.

The Government originally argued that the earlier claim was insufficient on its face because it failed to state a "sum certain," # 5 at 6 n. 6, but at the hearing on the matter, the Government conceded that the original claim had been amended to state a "sum certain" of $150,000. Instead, the Government argued at the hearing that the description of the claim was insufficient to put the Government on notice of the claims against it.

This argument has merit. The documents submitted by the Government show that the original claim was submitted on an SF–95 form. A properly executed SF–95 form ordinarily satisfies the presentment requirements. *See Skwira,* 344 F.3d at 70. In this case, however, there is some question whether Lopez had submitted a properly executed SF–95. In the space prompting claimants to state the basis of the claim (including "the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof,") Lopez wrote simply "See Enclosed Materials." Those materials, as far as the Court can tell, consisted of a stack of Lopez' medical records. Even under the First Circuit's lenient notice-of-claim requirements, Lopez here apparently did not meet those minimal requirements. Although a claimant need not submit the standardized SF–95 form to present a claim to the federal agency, *see Santiago–Ramirez,* 984 F.2d at 16 (holding that letter from claimant's attorney provided sufficient information to allow the agency to investigate), a thorough scrutiny of the records as presented would not have been sufficient to put the Government on notice of the specific nature of the claim— the failure to treat Lopez' foot injury properly—or the specific involvement of USMS. *Cf. Booten v. United States,* 95 F.Supp.2d 37, 47 (D.Mass.2000) (plaintiff complied with notice requirements of Sec-

tion 2675 when, on her SF–95, she "clearly stated the nature of the claims [and] the date on which the allegedly tortious conduct occurred . . . ."); *Santiago–Ramirez,* 984 F.2d at 20 (letter from plaintiff's attorney satisfies notice requirement because it stated "the identity of [the claimant], the date of the incident, the location of the incident, the government agents involved, and the type of injury alleged.") Indeed, the documents before the Court establish that the Government, in April 2001, specifically requested "enough facts to allow the appropriate agency to investigate the circumstances surrounding the incident giving rise to the claim in order to determine liability." Letter dated April 11, 2001 from U.S. Dep't of Justice to Jaime P. Serrat, # 19. In particular, it requested "enough factual information . . . to show USMS involvement giving rise to the claim, including the location, date(s) and names of responsible USMS employees . . ." and further noted that "[t]he attachments [Lopez] submitted to the SF 95 do not satisfy this requirement." *Id.*

The Court determines, at least based on the documents that it has before it, that the administrative claim fails adequately to satisfy the notice requirements.[6] *See e.g., Deloria v. Veterans Administration,* 927 F.2d 1009, 1012 (7th Cir.1991) (rejecting argument that sixty-three pages attached to administrative claim form were sufficient to foreshadow malpractice claim, and concluding that "even if faint intimations" of claim could be gleaned from attachments, fair notice requirement was not satisfied). At this point, of course, Lopez has not pled any facts from which the Court can conclude that its jurisdiction properly derives from that earlier claim.

For example, the Court has before it no facts or allegations from which it can determine the ultimate agency disposition of the claim. If the agency denied the claim, then Lopez' cause of action must be dismissed because Lopez failed to bring suit within six months of the final agency denial. 28 U.S.C. § 2401(b). If the agency failed to act on the claim, then the claim itself may still be viable, even at this late date because the FTCA does not impose a statute of limitations on the subsequent tort suit. *See e.g., Pascale v. United States,* 998 F.2d 186, 192–93 (3rd Cir.1993) (holding that "[a]s long as a claimant files an administrative claim within two years of its accrual and the agency does not send notice of final denial, the claimant may wait indefinitely before filing suit.") (and cases cited.) Furthermore, the documents submitted by the Government establish that the agency requested specific information from Lopez' predecessor counsel in an attempt to flesh out the nature of the claim. If predecessor counsel responded to that request, the Court may consider those documents in determining the viability of the October 2000 claim. *See e.g., Booten,* 95 F.Supp.2d at 47–48. If, however, Lopez' predecessor counsel neglected to respond to the request thus preventing the agency from investigating the claims, then, under First Circuit law, the case must be dismissed. *Swift v. United States,* 614 F.2d 812, 814 (1st Cir.1980) (affirming dismissal of claim where "counsel's neglect prevented the agency from acting on the claim"); *Coska,* 114 F.3d at 323 (affirming dismissal of FTCA claim when plaintiff failed, after repeated requests from agency, to provide necessary information).

---

**6.** Lopez' predecessor counsel at least put the Government on notice that Lopez was pursuing a negligence claim in his April 26, 2000 letter to the Government. Even considering that letter in conjunction with the SF–95 and the appended documents, the Government would not have had minimal notice about the nature of the negligence claim or USMS involvement.

By the time of the hearing, Lopez' counsel had not seen the attachments to the original presentment, and the Court itself is unable to determine whether it may assert jurisdiction over the October 2000 claim without answering at least the questions listed above. The Court will therefore permit Lopez limited discovery, as set out below, in order to establish this Court's jurisdiction.

### 2. The Independent Contractor Hurdle

■ The Government argues that Lopez' claim must be dismissed because the Lakeville County Jail is an "independent contractor" of the government, and therefore, under the FTCA, the Government is not liable for the jail's acts or omissions. The FTCA only waives the sovereign immunity of the United States for suits based on the acts or omissions of federal agencies or employees, 28 U.S.C. § 1346(b), 2671; *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976), and expressly excludes from its coverage "any contractor with the United States." 28 U.S.C. § 2671. "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976 (quoting *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)). The focus is on the degree to which the Government supervises the contractor's "day-to-day operations." *Id.*

The Government has appended to its motion to dismiss a copy of the contract between the Lakeville County Jail and the Bureau of Prisons that details the responsibilities of the county jail. On the face of that contract, the United States has apparently not retained day-to-day control over the daily operations of the jail. However, on the question of medical care, the contract contemplates removing prisoners both for emergency and routine medical care and states the following:

> The Local Government agrees to provide federal prisoners with the same level of medical care and services provided local prisoners including the transportation and security for prisoners requiring removal from the facility for emergency medical services....
>
> The Local Government agrees to notify the U.S. Marshal as soon as possible of all emergency medical cases requiring removal of a prisoner from the facility and to obtain prior authorization for removal for all other medical services required.

Declaration of Debra Browne, Attachment, Article III ¶¶ 2–3, # 6.

This language may operate as a simple notification requirement the import of which is that the Federal Government has an interest in knowing to where and when its inmates have been transported. On the other hand, in requiring the local government "to obtain prior authorization for removal for all other medical services required," the language may also be read to suggest that the Government has retained control over the most fundamental of medical decisions: whether to permit treatment at all. While the Court is inclined, given the broad language contained in the first paragraph, to view this language as nothing more than a notification requirement, on a motion to dismiss, the Court is loathe to decide this question simply on the basis of the contract language alone. *See e.g., Brooks v. A.R. & S. Enterprises, Inc.,* 622 F.2d 8, 11 (1st Cir.1980) (giving great weight to contract language, but noting that contract alone is not dispositive, and considering factual circumstances). The Court, therefore, will permit some discovery to determine whether, as a factual matter, the Government "direct[ed] the manner in which the contractor car-

rie[d] out its obligations under the contract." *Larsen v. Empresas El Yunque, Inc.,* 812 F.2d 14, 15 (1st Cir.1986) (quoting *Brooks,* 622 F.2d at 11).

### 3. Discovery Guidelines

In short, the Court has concerns about the sufficiency of the administrative claim and the status of the county jail as an independent contractor.[7] Still, the Court has similar doubts about the completeness of the record before it. For those reasons, the Court will grant Lopez a period of time within which to conduct discovery limited to the jurisdictional questions as set forth above, and to amend his complaint to allege properly this Court's jurisdiction over claims arising out of the October 2000 claim. Lopez' amended complaint must therefore establish: 1) the ultimate disposition of the October 2000 claim; 2) facts to establish the sufficiency of the claim to satisfy the notice-of-claim requirements; 3) facts that establish that the county jail is not an independent contractor of the United States. Obviously, any amended complaint must comport with the provision of Rule 11, Fed.R.Civ.P. If Lopez fails to establish this Court's jurisdiction in his amended complaint, the Court will dismiss all claims based on the October 2000 presentment.

### V. Order

For all the above reasons, it is ORDERED that the Government's Motion to Dismiss Pursuant to Fed.R.Civ.P. (# 4) be, and the same hereby is, ALLOWED as to claims which derive from Lopez' June 2002 administrative presentment and which the Court has held are barred by the statute of limitations, and otherwise DENIED. Claims based on the June 2002 presentment which are not barred by the statute of limitations may go forward. The Court will permit limited discovery to establish whether this Court has subject matter jurisdiction over claims based on the October 2000 administrative claim.

---

7. The Court has been unable to uncover any case in which a county jail has not been held to be an independent contractor. The leading case, of course, is *Logue v. United States,* 412 U.S. 521, 530, 93 S.Ct. 2215, 2221, 37 L.Ed.2d 121 (1973), which held that a county jail was an independent contractor of the United States because, *inter alia,* the agreement gave the United States no authority to supervise the jail's employees. *Accord Harper v. United States,* 515 F.2d 576 (5th Cir.1975) (same). Even so, the contracts at issue in those cases did not contain a clause similar to the one at issue in this case.